## Holt, et al. v. Farmers' Loose Leaf Tobacco Warehouse Company, et al.

(Decided November 30, 1923.)

### Appeal from Nelson Circuit Court.

1. Chattel Mortgages—Mortgage Taken with Knowledge of Prior Unrecorded Mortgage Subordinate Thereto.—A mortgage on a tobacco crop, prior in time, though not recorded, was prior and superior to a subsequent mortgage delivered to one having knowledge of the prior mortgage, in view of Ky. Stats., section 496.

2. Evidence—Well Known that Tobacco Warehouse can Promote Business by Advancing Money.—It is a well-known fact among tobacco growers and dealers that a warehouse can greatly promote its business interests by advancing money to growers and buyers.

3. Warehousemen—Warehouse Company Authorized to Lend Money to Tobacco Producers.—While a warehouse corporation was not specifically authorized by its charter to loan money to tobacco producers on mortgage, it could do so as a reasonable and necessary incident of the business of buying, selling, and rehandling of tobacco on commission, under Ky. Stats., sections 542, 1391a.

OSSO W. STANLEY for appellants. .

NAT. W. HALSTEAD, MORGAN YEWELL, and C. T. ATKINSON for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE SAMPSON—Affirming.

One Terrill, who had become financially involved while owning and holding a large amount of both real and personal property, on July 19, 1920, obtained from the Farmers' Loose Leaf Tobacco Warehouse Company, a corporation, a loan of $2,000.00, which was evidenced by a note of that date secured by a mortgage on 60 acres of growing tobacco. W. H. Hays was surety on the note. This mortgage was not recorded until after August 24, 1920, on which date Terrill mortgaged the same tobacco to appellants, Holt & Holt, for $3,804.00.

The chancellor adjudged the mortgage given by Terrell to the warehouse company prior and superior to that given Holt & Holt, and the latter appeal.

It is appellants' contention that the warehouse company, being a corporation organized for and engaged in the business of operating a public warehouse for receiving, storing, rehandling, buying and selling tobacco

on commission, could not make a valid loan, such as the one under consideration, and its attempt to do so was a violation of the statutory regulations of commercial corporations, rendering the contract illegal and unenforceable; that the warehouse company's act in attempting to borrow the $2,000.00 and loan it to Terrell was *ultra vires,* and therefore void, and, being so, appellants insist that they had a right to consider the transaction as having never occurred, and upon attempt being made to enforce the rights acquired thereunder to their prejudice, to question its validity.

On the other hand appellee, warehouse company, takes the position that it was within its rights as such corporation in making the advancement of money to Terrell on a growing crop of tobacco under section 542, Kentucky Statutes; and it further says that a note with surety secured by mortgage on a growing crop of tobacco to the warehouse company is and was not *ultra vires* nor illegal and may therefore be enforced, and relies upon section 1391A, Kentucky Statutes. Appellants, Holt & Holt, insist that as their mortgage was recorded first it must be adjudged prior and superior to that of the warehouse company, but appellee, warehouse company, argues that its mortgage, being prior in time, is superior to and must prevail over the mortgage made by Terrell to Holt & Holt because Holt & Holt, at the time they took and accepted the mortgage, had actual knowledge of the existence of the mortgage to appellee, warehouse company, on the same tobacco. Without taking up much time or space with the consideration of this last question, it may be stated that the evidence strongly tends to prove that Holt & Holt actually knew of the existence of the mortgage made by Terrell to the warehouse company at the time the latter took a second mortgage to secure their debt upon the same tobacco. This being true it must be admitted that the chancellor did not err in holding the warehouse company's mortgage prior and superior to that of Holt & Holt, unless found to be otherwise upon one of the other questions presented by counsel for appellant. Section 496, Kentucky Statutes.

Private corporations, such as the appellee, warehouse company, are by statutes, section 542, given power to exercise, subject to law, such powers as may be necessary to conduct the business or promote or carry on the object and purpose for which it was organized. The

warehouse company was organized to buy and sell tobacco on commission. It is a well known fact among tobacco growers and dealers that a warehouse can greatly promote its business interests by advancing money to growers and buyers. It is. a general practice among tobacco warehousemen of the state to advance money to farmers on growing crops and to otherwise aid producers of tobacco in order that the tobacco may be passed through their warehouses. If we deprive the warehouse of such power we will in a large measure destroy not only their ability to promote the business but their usefulness as well. In discussing the rights and liabilities of private corporations, we said in German Insurance Company v. Commonwealth, 141 Ky. 606: "A corporation organized for business purposes, and with power to carry on business enterprises, should be allowed the same liberty within the scope of its charter rights, and subject to the limitations imposed by law, as would be permitted to an individual engaged in a similar business. It is not the purpose of the Constitution or the law to place in the way of the success of corporations unreasonable obstacles or to hinder them from acting as prudent business men would act under like or similiar circumstances. Having this view of the privileges that corporations should enjoy, we do not think that the Constitution should be so construed as to deny a corporation the opportunity to look forward to the time when its needs in the conduct of its business will be greater than at present, or to deprive it of the right to prepare in advance for conditions that it may reasonably expect will come up in the future. If a corporation was not allowed to carry into execution the plans that the good judgment of its officers believe to be essential to its growth and prosperity, it would discourage the people from investing their money in these agents, that are so indispensable in the business of the state and country."

While the warehouse company was not specifically authorized by its charter to loan money to tobacco producers, it was authorized to do all things reasonably incident to the buying, selling and rehandling of tobacco on commission, including all things customarily and generally done by corporations engaged in like business in this Commonwealth. This, we think, includes loaning or advancing money by tobacco warehouse companies, such as appellee, to growers of tobacco, if such is the custom among such warehouses and is a reasonable and neces-

sary incident of the business of buying, selling and re-handling tobacco on commission. We therefore conclude that the loan made by the tobacco warehouse company to Terrell was not, as to the corporation, *ultra vires*, and did not violate any of the provisions of our statutes pertaining to the powers and rights of private corporations organized under our laws. This conclusion renders it unnecessary to discuss the other questions raised.

Judgment affirmed.