# Sweeney's Guardian Ad Litem v. Sweeney's Committee.

(Decided Oct. 30, 1934.)

THOS. A. BALLANTINE for appellant.
DODD & DODD for appellee.

OPINION OF THE COURT BY JUDGE RICHARDSON—Affirming.

R. J. Sweeney, a resident of Jefferson county, Ky., was adjudged of unsound mind and committed to the

118

Central State Hospital at Lakeland, Ky., under the orders of the Jefferson circuit court. His family was composed of himself, wife, and three children. The children were boys and a girl, six, fifteen, and sixteen years of age, respectively. His wife was appointed a committee, and as such assumed control and possession of his property. At the time of his commitment, he was the owner of a house and lot situated in Louisville, Jefferson county, Ky., and very little personal property. He had no income, except that from a life insurance policy in the National Life Insurance Company of Montpelier, Vt., in the sum of $25,000, which contained a disability clause obligating the company to pay to his estate $250 a month. His committee has collected this latter sum each month and used it to defray the living expenses of herself and children, the maintenance of Sweeney in the asylum, and the payment of the taxes, insurance, and repairs on his property. She avers that the $250 a month is the entire income of the estate of Sweeney and it is insufficient, even with retrenchment, to maintain and support the children as well as herself, pay the asylum expenses of Sweeney, taxes, insurance, and cost of the upkeep and repairs of the. home, occupied by herself and the children. She entered into a contract with Blakey Helm, exchanging the Sweeney house and lot for a smaller house and lot and $7,000, the difference in their values, evidenced by notes bearing 5 per cent. interest, secured by a lien on the Sweeney house and lot, payable $500 per year for a period of five years, at which time the balance becomes due and payable.

This action was filed to secure the approval of the Jefferson circuit court of her contract with Helm. A guardian ad litem was appointed and reported, and depositions were taken, in the manner provided by section 2150a, Ky. Stats. Supp. 1933. Upon the submission for judgment, on the pleadings, the report of the guardian ad litem, and the evidence, the judge of the court approved by necessary and proper order the exchange of the properties and the investment of the $7,000 in the manner agreed upon in the contract between the committee and Helm, and required the committee to execute a bond in accordance wtih section 2150a.

The guardian ad litem appeals, insisting that the words "may sell and convey," as they are used in section 2150a, are "not sufficiently broad to include a tran-

saction which partakes of any nature other than that of a pure sale." To sustain his insistence, he cites Black's Law Dictionary (2d Ed.) under "Sale," p. 1053; Butler v. Thomson, 92 U. S. 413, 23 L. Ed. 684; Five Per Cent Cases (Iowa v. McFarland), 110 U. S. 471, 4 S. Ct. 210, 28 L. Ed. 198; White v. Treat (C. C.) 100 F. 290; Ward v. State, 45 Ark. 353. The text-book and cases cited define the term "sale" and distinguishes it from "barter" and "exchange." There is a clear, legal distinction between the terms "sale" and "barter" or "exchange." However, it is unnecessary in this case to give effect to this distinction. The validity of section 2150a and the meaning of its terms were determined in Kentland Coal & Coke Co. v. Coleman's Guardian, 243 Ky. 184, 47 S. W. (2d) 1069. The right to apply to and secure the approval of an investment by a fiduciary, the funds in his custody, and the jurisdiction of the court under section 4706, Ky. Stats. Supp. 1933, were considered and determined in Houston's Guardian v. Luker's Former Guardian, 253 Ky. 602, 69 S. W. (2d) 1014.

Since our opinion in the Coleman Case, the authority of the committee to contract the sale of the house and lot for a money consideration not to be consummated until the same shall have been approved by the judge of the circuit court of the county in which the real estate is located, under this section, and the jurisdiction of the judge of the court to approve the same, are not now controversial.

The allegations of the petition and the evidence supporting same establish very plainly the transaction embraced by the committee's contract with Helm partakes both of the nature of a sale and a reinvestment. Section 4706 conferred upon the committee of Sweeney the right to invest the $7,000, the difference in the valuation of the properties, and the right to apply to the court for approval of the investment. And when this section is read in connection with section 2150a, plenary authority was conferred upon the committee to sell the house and lot and invest the proceeds in the manner set out in the contract subject to the approval of the court as provided by these sections. Concededly, the contract of the committee with Helm partakes of the nature of a sale, as authorized by section 2150a, and also of an investment, under section 4706. Though the contract of the committee and Helm may be considered either as

120

a sale for a cash consideration, or of an exchange or swap of property and part cash consideration, since it partakes of both the nature of a sale, authorized by section 2150a, and of an investment, under section 4706, and these sections authorizing a sale for cash and an investment of the cash in other real estate, subject to the approval of the court, the court appropriately approved both the sale and the investment on proper pleadings, supported by the evidence. Since there is no statutory rule of practice forbidding the committee from applying by an appropriate petition to the court for approval of a sale and conveyance of the real estate of the ward and in the same secure the court's approval of an investment of the proceeds thereof, we comprehend no reason for not approving such proceeding, which is tantamount to separate proceedings; one under section 2150a and the other under section 4706.

Wherefore, the judgment is affirmed.