## Landers et al. v. Scroggy et al.

June 25, 1943.

Terry L. Hatchett for appellant.

Richard L. Garnett for appellee.

OPINION OF THE COURT BY JUDGE SIMS—Reversing.

On Aug. 26, 1938, Mrs. Janie Landers, individually and as guardian of her three infant children, Thomas, Harry and Vernon Landers, entered into a written contract with C. B. and E. T. Scroggy, wherein she agreed to sell and they agreed to buy for the price of $5,500, subject to the approval of the chancellor, a farm described as containing 68 acres, more or less, located in Barren County, together with the landlord's portion of the growing crops, the loose lumber and tobacco sticks.

The title to the farm was in the infants subject to their mother's dower, and Mrs. Landers filed a petition in equity in the Barren Circuit Court on August 27, 1938, as provided by sec. 2150a, KS (which was repealed by chapter 137, page 603, sub-section 8, page 607, of the Acts of 1942, and therefore does not appear in the Revised Statutes but it is now found in the 1942 Pocket Supplement of the Civil Code of Practice as subsection 8 of section 489), to obtain the chancellor's approval of the sale of the real estate as being for the best interest of her infant wards. Upon proof heard the chancellor on Sept. 15, 1938, approved the sale and directed the guardian on behalf of the infants to execute a deed to the purchasers.

Subsequently it was ascertained that the farm contained only 57 acres instead of 68 acres, and on Dec. 28, 1939, the purchasers filed this action against the guardian and her wards to recover $890.89 for the shortage of 11 acres at $80.99 per acre. Defendants' demurrer to the petition having been overruled, they filed answer, which was three times amended, pleading that the sale was by the boundary and that the purchasers knew what land they were buying and that the number of acres was given merely for the purpose of description; that the land was sold at a judicial sale and no objection was raised until after the sale was confirmed and the term of court had expired and the rule of caveat emptor applies; that the crops and improvements were worth $3,550, leaving the land worth $1,950. The affirmative matter in the answer as amended was controverted of record, proof was taken and the chancellor valued the land without improvements at $3,579 and rendered judgment against defendants for the shortage of 11 acres at $52.63 an acre, or $578.93.

On this appeal defendants rely upon numerous grounds for reversal. But as the judgment must be reversed because this was a decretal sale and the rule of caveat emptor applies, therefore the purchasers cannot recover for a shortage of acreage after the confirmation of the sale in the absence of a fraudulent representation, it will not be necessary to consider the other grounds.

There can be no doubt that a sale of infant's real estate under sec. 2150a, KS (now subsection 8 of section 489 of the 1942 Pocket Supplement to the Civil Code of Practice) is a judicial sale. The court so construed this

statute in Kentland Coal & Coke Co. v. Coleman's Guardian, 243 Ky. 184, 47 S. W. (2d) 1069, 1072, when it wrote that the real purpose of the Act was to authorize a private sale with the approval of the court where a sale could be had under existing law but only at public outcry by the master commissioner. The Coleman case was followed in Sweeney's Guardian v. Sweeney's Committee, 256 Ky. 117, 75 S. W. (2d) 749. In 25 Am. Jur. sec. 134, p. 83, it is said that a sale by a guardian of the ward's property under the order and subject to the confirmation of the court is a judicial sale and is governed by the rules relating thereto.

Plaintiffs earnestly contend that where there is a shortage of acreage in a judicial sale there should be a proportionate rebate of the purchase price, citing many cases, among which are Cooper v. Hargis' Adm'r, 45 S. W. 112, 20 Ky. Law Rep. 41; McGuire v. Garrett, Sheriff, et al., 207 Ky. 714, 270 S. W. 4; Courtney v. Farthing, 282 Ky. 54, 137 S. W. (2d) 703. The Cooper case reviewed many earlier decisions wherein the purchasers at decretal sales were not familiar with the property they bought and relied upon the area announced by the master commissioner and the opinion referred to Dawson v. Goodwin, 15 B. Mon. 439, 54 Ky. 439, and said that there was no reason why the same rule should not apply to judicial sales which relates to private ones to correct an innocent mistake and to prevent an unconscionable advantage being taken of the purchaser.

In the case at bar the real estate agent who interested plaintiffs in the purchase of this farm represented it as containing 68 acres, and the contract, as well as the judgment approving the sale and the subsequent deed, so described it. But no unconscionable advantage was taken of the purchasers who resided near the land and knew as much, if not more, about its area than did Mrs. Landers. The purchasers knew they were dealing with a widow and her infant children of tender years. They had from the day they made the contract, Aug. 26, 1938, until the court approved the sale on the following Sept. 15th, in which to survey the land. If the title had failed and this suit had been brought to recover the purchase price, this court would have said:

"You had twenty days before the sale was confirmed to investigate the title. You failed to do so. After the confirmation of a judicial sale and after

the term has expired, it is too late to complain of the failure of title."

McGuire v. Garrett, Sheriff, et al., 207 Ky. 714, 270 S. W. 4, cited and relied upon by plaintiffs supports this proposition.

We cannot see why the purchaser should be in a different position when the title fails completely than when there is but a partial failure. Certainly, it should be incumbent upon him to complain of a shortage of acreage before the confirmation when it is necessary for him to so complain in a case of absolute failure of title. It does not make sense to say that the purchaser must complain of an absolute failure of title before the sale is confirmed in order to obtain relief, but where there is only a partial failure of title he may obtain such relief without making complaint before the sale is confirmed. By the intended purchaser making seasonable objection, the prospective seller might protect the infant from a loss by not carrying out the contract. For the purchaser to be heard to complain of the shortage in acreage for the first time after the sale has been confirmed and the term has expired, puts him in a position to take an unconscionable advantage of the infant.

The chancellor approved this sale of the infants' land in the case at bar for $5,500 and had the purchaser asked for a reduction of $578.93 due to the shortage of 11 acres before the sale was confirmed, there is no reason to believe that the chancellor would have held that the sale at this reduced figure would have been for the benefit of the infants. Nor is it probable that the guardian would have contracted to sell at this figure, subject to the court's approval.

It was held in Courtney v. Farthing, 282 Ky. 54, 137 S. W. (2d) 703, that the rule of caveat emptor does not apply to the mistake made by the master commissioner as to the quantity of land included in the sale, and that opinion is in harmony with Cooper v. Hargis' Adm'r, 45 S. W. 112, 20 Ky. Law Rep. 41. Both of those opinions are easily differentiated from the instant case which is quite similar to Beale v. Stroud, 191 Ky. 755, 231 S. W. 522, where it developed the infant, Eva Stroud, had no title to the land which the decree ordered sold for the purpose of reinvestment for her benefit. After the sale had been confirmed and after the term expired the

purchaser brought suit against the infant to recover the sale price of the land he had not received. We held the trial court properly sustained a general demurrer to the petition, saying that the rule of caveat emptor applied and the purchaser only got such title as the infant had in the absence of a misrepresentation upon which he relied.

In the Stroud case the purchaser could have investigated the title before the sale was confirmed and have ascertained that the infant had no title, just as in the instant case the purchasers could have had the land, with which they were familiar, surveyed within the 20-day interim before the chancellor approved the sale. But in the Courtney and Cooper cases, supra, the purchasers were not familiar with the lands and were misled by the representations of an officer of the court whose duty it was to make the sale; hence we said in those opinions it would be inequitable to apply the caveat emptor doctrine.

We are aware of no case in this jurisdiction where the court has been called upon to apply the rule of caveat emptor to the sale of infant's real estate where there was a shortage of acreage and this appears to be a case of first impression. We do not feel inclined to extend the rule of Cooper v. Hargis' Adm'r, 45 S. W. 112, 20 Ky. Law Rep. 41, to a judicial sale of infant's real estate where no fraud was practiced and the purchasers had the same, or greater, knowledge of the area of the land as the seller and had 20 days from the time they contracted for the land to the confirmation of the sale in which to have it surveyed.

Plaintiffs cite Stonerook v. Wisner, 171 Iowa 109, 153 N. W. 351, L. R. A. 1915E, 834, Ann. Cas. 1917E, 252, and McComb v. Gilkeson et al., 110 Va. 406, 66 S. E. 77, 135 Am. St. Rep. 944, as holding that where the guardian sells the infant's real estate under order of court and a shortage of acreage develops, the infant should be required to account to the purchaser therefor. The Wisner opinion is rested on the Iowa rule that the doctrine of caveat emptor does not apply where the sale is decreed by a court of equity, but is applicable only in sales under execution. It held that as the sale by the guardian under order of court was a judicial sale, the same rule should apply which governs sales under decree of a court of equity. But in our jurisdiction the caveat emptor rule

applies to sales decreed by the chancellor. Should the logic of the Iowa Supreme Court be applied to the Kentucky rule, one would be forced to conclude that the caveat emptor doctrine applies to a guardian's sale just as it does to one decreed by a court of equity, since it must be approved by the chancellor.

In the McCombs case both adults and infants joined in the sale of a farm of 245 acres, more or less, which the court approved on behalf of the infants. After the sale was approved a shortage of 10 acres was discovered and suit was brought for a pro rata abatement of the purchase price. The opinion does not discuss the caveat emptor doctrine but says that courts of equity do not favor contracts of chance and that where the number of acres are recited in the deed the sale is presumed to be by the acre, and there is no reason why infants as well as adults should not be liable to account for a shortage in the acreage. The Virginia Supreme Court treated this as if it were a private sale, or rather applied the same rule of law to a judicial sale which covers one privately made, hence the opinion sheds but little light upon the question before us.

From what has been said, it is evident that the court erred in overruling the general demurrer to the petition. The judgment is reversed with directions to sustain the demurrer and to dismiss the petition.

The whole Court sitting, except Chief Justice Fulton.

Judges Cammack and Rees dissenting.